# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 5:20-mj-00047
Residence of Greg Waters, Jr., with an address of 194 )
Central Avenue, Apt. B, Beckley, Raleigh County, West )
Virginia )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the   Southern   District of   West Virginia  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 856 | Distribution of controlled substances and maintaining drug-involved premises. |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☑ Delayed notice of  30  days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mark P. Gunther, II, Special Agent FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  Telephone   *(specify reliable electronic means)*.

Date: 09/24/2020

*Judge's signature*

City and state: Beckley, West Virginia    Omar J. Aboulhosn, United States Magistrate Judge
*Printed name and title*

## Attachment A

A residence located at 194 Central Avenue, Apartment B, Beckley, Raleigh County, West Virginia and within the Southern District of West Virginia. The residence is a brick apartment building with the main entrance on Bench Lane in Beckley, West Virginia. The main structure sits between Bench Lane and the Beckley Rail Trail. A mailbox on the porch reads '194 Central Ave Apt. A & B'.




**Attachment B**

1. Evidence of Drug Trafficking: Controlled substances, packaging materials, scales, cutting agents, presses, rubber bands, plastic bags, discarded wrappers, ledgers, bills of sale, owe sheets, lists of telephone numbers or other contact information, identifying information of customers and/or suppliers, documents related to the electronic transfer of money to include receipts for Western Union, MoneyGram and the like, prepaid debit cards, items used to detect police surveillance or to detect the presence of radio broadcasts, "bugs," or similar investigative equipment, items associated with the use of controlled substances such as smoking devices, needles, items with suspected drug residue

2. Evidence of Maintaining a Drug-Involved Premises: Utility bills, deeds, mortgage records, identification documents, mail, surveillance equipment to include DVR or similar recording devices;

3. Evidence of Interstate Travel in Furtherance of Drug Trafficking including such items as car rental receipts, agreements and associated paperwork, GPS enabled devices, receipts for fuel, records of using hotel accommodations;

4. Fruits of Criminal Activity: United States currency, all documents showing the purchase, ownership, lease (as lessor or lessee), or sale of any asset, personal or real

to include automobiles, boats, motorcycles or similar motorized conveyances to include deeds, titles, and bills of sale, cellular phones, electronic communication devices, ipads or tablets, drug ledgers and/or records relating to drug trafficking and drug debts; and

      5. Firearms, ammunition, and items associated with firearms to include manuals, receipts or other records associated with the purchase and acquisition of firearms, and firearm and ammunition storage containers.

# AFFIDAVIT

STATE OF WEST VIRGINIA

COUNTY OF RALEIGH, to-wit:

I, Mark P Gunther II, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. This affidavit is made in support of an application for a search warrant to search the premises as more particularly described in Attachment A located at 194 Central Avenue, Apartment B, Beckley, Raleigh County, West Virginia. Based on the facts set forth herein, probable cause exists that evidence of violations of 21 U.S.C. §§ 841 - distribution of controlled substances and possession with intent to distribute controlled substances, and 21 U.S.C. § 856 - maintaining a drug-involved premises, fruits of that criminal activity, and property designed for use, intended for use, or used to commit those offenses are currently located at that location.

2. I have been employed as a Special Agent of the Federal Bureau of Investigation ("FBI") since May 2017, and I am currently assigned to the Charleston, West Virginia Resident Agency of the Pittsburgh Division. Prior to my employment with the FBI, I was employed as a Deputy Sheriff with the Raleigh County, West Virginia Sheriff's Office for over nine years,

including approximately three years as a detective. During my employment with the FBI, I have participated in many different types of criminal investigations including but not limited to kidnapping, bank robbery, and other violent crimes, health care fraud, financial institution fraud, as well as matters relating to violent street gangs and criminal drug enterprises. In my capacity as an FBI Agent, I have received specialized training and/or have gained experience through everyday work in conducting these types of investigations. As part of my duties with the FBI, I investigate violations of federal law, including drug trafficking offenses enumerated in Title 21 U.S.C 841 and 856. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. There is probable cause to believe that the individual identified below and others yet unknown, are members of an extensive drug trafficking network and have committed, are committing and will continue to commit the following offenses: (i) the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); and (ii) 21 U.S.C. § 856 - maintaining a drug-involved premises.

4. The information contained herein is based on my knowledge, training, and experience, my direct involvement in this investigation, and upon information relayed to me by other law enforcement agents, and other witnesses. Because this Affidavit is being submitted for the limited purpose of seeking a search warrant for the above-named property, I have not set forth each and every fact learned during the course of this investigation, but simply those facts which I believe are necessary to establish probable cause.

BACKGROUND

5. Between January of 2020 and September of 2020, multiple controlled narcotics purchases have been made from GREGORY WATERS JR (the "SUBJECT INDIVIDUAL")

6. During a controlled purchase on September 18, 2020, WATERS JR was observed leaving his known residence at 194 Central Avenue, Apartment B, Beckley, Raleigh County, West Virginia and was under continuous surveillance until providing the narcotics to the confidential informant. Based on my training, experience, and consultation with other law enforcement officers, it is believed that WATERS JR is storing controlled substances at his residence.

7. Each controlled purchase was made using a confidential informant. The confidential informant was provided with an amount of pre-recorded currency to utilize in the

controlled purchase. The majority of the controlled purchases were surreptitiously audio and video recorded by a micro recording device provided to the confidential informant.

8. The confidential informant's person and vehicle (in cases where a vehicle was utilized,) were searched prior to and after the controlled purchase to ensure that no controlled substances were present prior to the controlled purchase and that all controlled substances purchased were turned over to law enforcement.

## BACKGROUND: ITEMS TO BE SEIZED

9. Based upon my experience and training, consultation with other law enforcement officers experienced in drug and financial investigations, and all facts and opinions set forth in this affidavit, I know that:

    a. Individuals involved in narcotics trafficking often maintain the following items in their residences: controlled substances and paraphernalia for packaging, weighing, cutting, testing, distributing and manufacturing controlled substances.

    b. Individuals involved in narcotics trafficking often maintain records of their narcotics transactions and other records of evidentiary value for months or years at a time. It is common, for example, for narcotics traffickers to keep pay/owe sheets or other papers of narcotics sold and monies owed. Such pay/owe sheets or papers are used as a basis for accounting and for

4

settling existing debts. Such records are often maintained for a substantial period of time even after the debts are collected. I have found in my training and experience that such records are invaluable to narcotics traffickers and that such records are rarely discarded. Finally, it has also been my experience that such records and pay/owe sheets also frequently include the names, identities and telephone numbers of suppliers, customers and co-conspirators.

        c. Individuals involved in narcotics trafficking must often rely on others to obtain their drugs and to help them market the narcotics. Frequently, traffickers maintain evidence of the identities of these co-conspirators at their residence.

        d. Individuals involved in narcotics trafficking commonly earn income in the form of cash and try to legitimize these profits. In order to do this, traffickers frequently attempt to secrete, transfer and conceal the money by means, including, but not limited to: placing assets in the names other than their own to avoid detection while maintaining control; laundering the money through what appears to be legitimate business or businesses; hiding money in their homes, safes and safety deposit boxes; or using the money to buy assets which are difficult to trace. Records of these and other types of transactions are often found at residences of individuals involved in narcotics trafficking.

e. Individuals involved in narcotics trafficking often keep and maintain large amounts of United States currency at their residences. Such funds are often used for every day expenditures and to maintain and finance their ongoing narcotics business. Additionally, individuals involved in narcotics trafficking often amass and maintain assets at their residence which were generated by their trafficking activities, or purchased with the cash earned from such trafficking.

f. Individuals involved in narcotics trafficking often maintain weapons, firearms and ammunition on their person or in their residence and /or vehicles. Such weapons and firearms are used, and can be used, as an instrumentality of the crime of possession and distribution of drugs and firearms. Furthermore, I am aware of instances in which traffickers have maintained such items in their residences and vehicles in order to protect themselves and guard their drugs, firearms and profits, as well as for enforcement purposes during their narcotics and firearms dealings.

g. Residences and premises used by individuals involved in narcotics trafficking usually contain articles of personal property evidencing the identity of person(s) occupying, possessing, residing in, owing, frequenting or controlling the residence and premises.

6

h.  Individuals involved in narcotics trafficking frequently communicate with co-conspirators by means of cellular telephones and electronic paging devices and usually maintain these items on their person and/or in their residences and vehicles.

i.  Individuals involved in narcotics trafficking often utilize radio scanners, police radios and other electronic equipment in order to conduct counter-surveillance upon law enforcement authorities, and usually maintain these items on their person and/or in their residences and vehicles.

j.  Individuals involved in narcotics trafficking often maintain photographs, and/or audio and video recordings of their associates or real and personal property which were acquired with narcotics proceeds or property utilized to facilitate narcotics trafficking activities. Such items are typically maintained in their residences. Drug traffickers often store information relating to their drug trafficking business on computers and/or computer disks.

10. It is also my opinion and belief that the above-described documents are currently possessed by narcotics dealers and manufacturers much the same way a legitimate business will maintain records and tools of its trade whether or not the business has a particular item in inventory on a given date. These documents are kept by narcotics dealers whether or not the dealer

7

is in possession of any drugs and chemicals at any given moment. I believe that the seizure of such documents will provide evidence of the events set forth in this affidavit and that such documents can be found at the target location despite any lapse of the time between the events described and the anticipated search pursuant to this warrant.

11. The investigation into the criminal activities of the above individuals reveals that their drug distribution activities are ongoing. Due to the quantities of narcotics being distributed and the relatively sophisticated manner in which the above individuals conduct their illegal activities, I believe they have been engaged in the illegal sale of narcotics for a long period of time. Based on my training and experience, I believe that the criminal activity described above is, by nature, self-perpetuating. Several of the participants involved in the drug distribution have been targets of law enforcement for several years. They have been arrested on drug distribution investigations in the past but this has not deterred them from continuing in the business of drug trafficking and distribution. As a consequence, I believe that the items described in Attachment B will provide evidence of the events set forth in this affidavit and that such articles can be found at 194 Central Avenue, Apartment B, Beckley, Raleigh County, West Virginia despite any lapse of time between

the events described and the anticipated search pursuant to this warrant.

### SEARCH PROTOCOL FOR CELLULAR TELEHONES AND PDAS

12. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular telephones today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. Cellular service providers allow for their subscribers to access their device over the internet and remotely destroy all of that data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so

9

acquired. Conversations can be hidden in various applications. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

<u>PROBABLE CAUSE TO SEARCH RESIDENCE OF GREGORY WATERS JR AT 194 CENTRAL AVENUE, APARTMENT B, BECKLEY, RALEIGH COUNTY, WEST VIRGINIA</u>

13. On January 9, 2020, a controlled purchase of suspected heroin was made from WATERS JR in the area of 259 South Heber Street, Beckley, West Virginia. The operation resulted in the purchase of approximately four grams of suspected heroin for $250.00. The purchase was made using a confidential informant and was video and audio recorded. The substance purchased was tested by the Drug Enforcement Administration Mid-Atlantic Laboratory and found to be heroin.

14. On January 20, 2020, a controlled purchase of suspected heroin was made from WATERS JR in the area of 259 South Heber Street, Beckley, West Virginia. The operation resulted in the purchase of approximately four grams of suspected heroin for $250.00. The purchase was made using a confidential informant and was video and audio recorded. The substance purchased was tested

by the Drug Enforcement Administration Mid-Atlantic Laboratory and found to be heroin and fentanyl.

15. On January 29, 2020, a controlled purchase of suspected heroin and cocaine base "crack," was made from WATERS JR in the area of 259 South Heber Street, Beckley, West Virginia. The operation resulted in the purchase of approximately three grams of suspected heroin and three grams of suspected cocaine base for $450.00. The purchase was made using a confidential informant and was video and audio recorded. The suspected heroin purchased was tested by the Drug Enforcement Administration Mid-Atlantic Laboratory and found to be heroin and fentanyl and the suspected cocaine base was tested by the Drug Enforcement Administration Mid-Atlantic Laboratory and found to be cocaine base.

16. On August 25, 2020, a controlled purchase of suspected heroin was made from WATERS JR in the area of 2881 Robert C. Byrd Drive, Beckley, West Virginia. The operation resulted in the purchase of approximately three grams of suspected heroin for $300.00. The purchase was made using a confidential informant. The substance purchased was sent to the Drug Enforcement Administration Mid-Atlantic Laboratory and results are pending.

17. September 18, 2020, a controlled purchase of suspected heroin was made from WATERS JR in the area of South Heber Street and Woodlawn Avenue, Beckley, West Virginia. The operation resulted in the purchase of approximately one hundred and thirty

grams of suspected heroin for $4800.00. The purchase was made using a confidential informant and was video and audio recorded. The substance purchased was field tested and was found to be fentanyl.

18. Prior to the controlled purchase on September 18, 2020, WATERS JR was observed exiting the apartments at 194 Central Avenue, Beckley, West Virginia. WATERS JR left the apartments and returned approximately seventeen minutes later. WATERS JR was observed leaving the apartments approximately three minutes later and continuous surveillance was maintained until the suspected narcotics were delivered to the confidential informant, approximately five minutes later. WATERS JR made no other stops along the route and did not meet with anyone else prior to meeting with the confidential informant.

19. WATERS JR's known silver Acura passenger car has been observed parked at 194 Central Avenue, in Beckley, on numerous occasions since August 1, 2020.

20. A check of West Virginia Division of Motor Vehicles records on September 10, 2020 listed WATERS JR's residence as 194 Central Avenue, Apartment B, Beckley, West Virginia.

21. Officers have taken additional steps to verify that WATERS JR lives at 194 Central Avenue Apartment B, Beckley, West Virginia.

## CONCLUSION

22. Based on the above-stated information, probable cause exists that GREGORY WATERS JR is engaged in drug trafficking activities in violations of 21 U.S.C. § 841(a)(1) – distribution and possession with intent to distribute controlled substances, and 21 U.S.C. § 856 – maintaining a drug-involved premises. Probable cause exists that evidence of those offenses, fruits of those offenses, and property designed for use, intended for use, or used to commit those offenses are currently located at the residence of GREGORY WATERS JR as more fully described in Attachment A.

Further your affiant sayeth naught.

Mark P Gunther II
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me, and subscribed in my presence, this 24th Day of September, 2020.

Omar J. Aboulhosn
UNITED STATES MAGISTRATE JUDGE

13